C.G. Schmidt, Inc., Plaintiff-Respondent,

v.

Linda Tiedke, n/k/a Linda Sieber, Defendant-Appellant.†

Court of Appeals

*No. 93–1817–FT. Submitted on briefs November 15, 1993.—Decided December 21, 1993.*

(Also reported in 510 N.W.2d 756.)

†Petition to review filed.

For the defendant-appellant the cause was submitted on the briefs of *Randolph E. House & Kathryn Karlsson*, of *Law Offices of Randolph E. House*, of counsel, of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *W. Patrick Sullivan & Beth A. Thorson*, of *Godfrey, Braun & Hayes*, of counsel, of Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

SCHUDSON, J.   Linda Tiedke appeals from a judgment granting C.G. Schmidt, Inc., specific performance on a real estate purchase contract. The issue is whether the sellers, Linda and Gary Tiedke,[1] waived the deadline for acceptance of their offer by delivering the offer to Schmidt after the deadline had passed. We conclude they did and, therefore, affirm.

Schmidt's complaint stated a claim for breach of contract against Linda and Gary Tiedke. Linda Tiedke's answer took issue with the complaint, and further alleged as an affirmative defense that Schmidt had not accepted the offer within the stated time limit, making the contract null and void. Each party filed a motion for summary judgment. The parties agreed in the trial court, and agree on appeal, that the facts are undisputed.

On August 14, 1990, Schmidt delivered to the Tiedkes an offer to purchase certain property. By its terms, the offer was binding only if accepted by noon on August 18, 1990, and was contingent upon Schmidt providing the sellers with written waiver or notice of fulfillment of two conditions regarding code compliance and the presence of hazardous materials, by September 1, 1990.

On August 20, 1990, Linda Tiedke hand-delivered a counteroffer to Schmidt, dated August 14, 1990. The signature of Gary Tiedke was dated August 14, and that of Linda Tiedke was dated August 20. The counteroffer stated that all the terms and conditions of the offer to purchase remained the same except that

---

[1] The parties later stipulated to dismiss Gary Tiedke from this action because he executed a quitclaim deed for the property in question pursuant to a divorce judgment.

earnest money was to be $5,000 and was to be held in the sellers' attorney's account. The counteroffer also stated that it must be accepted by noon on August 20, 1990. However, it was not delivered until shortly after that time.

On August 21, a Schmidt representative signed the counteroffer and hand-delivered it to the Tiedkes' place of business, but did not speak to either of them. On August 30, Schmidt's attorney telephoned the Tiedkes' attorney to discuss the transaction. Tiedkes' attorney said the deal was "a go." Schmidt's attorney said he would be sending the earnest money "next week" and suggested the Tiedkes begin securing title evidence. On August 31, a representative of Schmidt hand-delivered a letter to the Tiedkes waiving the contingencies in the offer to purchase.

On September 4, 1990, Schmidt's attorney mailed the earnest money check to the Tiedkes' attorney. The cover letter confirmed their conversation of "last week" and suggested that the sellers obtain title evidence "so that we can keep this matter moving." However, the letter, mailed to the wrong address, was returned and was remailed on September 11.

On September 12, Schmidt received a letter from the Tiedkes dated September 10 stating, in part: "We are withdrawing our counter offer, and refuse to accept the provision of the offer." On September 14, Schmidt's attorney responded by letter that this was "unacceptable" and that Schmidt demanded that performance of the contract proceed toward closing. By letter of September 19, the Tiedkes' attorney acknowledged receipt of the earnest money, returned the earnest money check, and stated that his clients had "no intention of proceeding with this transaction."

The trial court granted Schmidt's motion for summary judgment, concluding that the Tiedkes had waived the acceptance deadline stated in their counter-offer by delivering it after that deadline, and that, therefore, the contract was valid. The court entered a judgment for specific performance.

On appeal, Tiedke argues that no contract was formed. Tiedke contends that the counteroffer became a legal nullity because it was delivered after expiration of the time for acceptance and, therefore, Schmidt's acceptance was of no effect. She relies on RESTATEMENT (SECOND) OF CONTRACTS secs. 35 and 36 (1981), which provide:

Section 35.   The Offeree's Power of Acceptance

(1)   An offer gives to the offeree a continuing power to complete the manifestation of mutual assent by acceptance of the offer.

(2)   *A contract cannot be created by acceptance of an offer after the power of acceptance has been terminated* in one of the ways listed in [sec.] 36.

Section 36.   Methods of Termination of the Power of Acceptance

(1)   *An offeree's power of acceptance may be terminated by*

    (a)   rejection   or   counter-offer   by   the offeree, or

    (b)   *lapse of time,*

    . . . .

(2)   In addition, *an offeree's power of acceptance is terminated by the non-occurrence of any condition of acceptance under the terms of the offer.*

(Emphasis added.) Thus, Tiedke maintains, this contract would not have been "created" because the "power of acceptance" was terminated by "lapse of time" and, in addition, by the "non-occurrence" of the "condition of acceptance" by the deadline.

Schmidt responds that a party to a contract can waive a condition that is for its benefit. *Godfrey v. Crawford*, 23 Wis. 2d 44, 49, 126 N.W.2d 495, 497 (1964) (in action for specific performance of a contract for the sale of lands, buyer permitted to waive contract provision that sale was conditioned on city council approval of zoning revision that would allow for buyer's intended use). Schmidt asserts that the doctrine of waiver, as applied in *Godfrey* to a contractual condition of performance, should also be applied to contractual conditions of acceptance. We agree.

Ordinarily, a contract cannot be formed if acceptance does not occur within the time provided in the offer. *Atlee v. Bartholomew*, 69 Wis. 43, 49-50 (1887). In this case, however, we, like the trial court, view the counteroffer as one that, in effect, contained no restriction on time for acceptance because delivery occurred after the express deadline.

Thus, although we do not differ with the authority relied on by Tiedke, we conclude that, in the terms of the RESTATEMENT (SECOND) OF CONTRACTS she cites, no "lapse of time" terminated Schmidt's power of acceptance because, by the time Schmidt received the counteroffer, no time limit remained as a condition of acceptance. Similarly, Schmidt's inability to exert his power of acceptance within the previously-prescribed deadline was not "the non-occurrence of any condition of acceptance" because, by the time Schmidt received

the counteroffer, the deadline condition had been extinguished by Tiedke's delayed delivery.

Tiedke argues that this situation should be controlled by RESTATEMENT (SECOND) OF CONTRACTS sec. 49 (1981), entitled "Effect of Delay in Communication of Offer:"

> If communication of an offer to the offeree is delayed, the period within which a contract can be created by acceptance is not thereby extended if the offeree knows or has reason to know of the delay, though it is due to the fault of the offeror; but if the delay is due to the fault of the offeror or to the means of transmission adopted by him, and the offeree neither knows nor has reason to know that there has been delay, a contract can be created by acceptance within the period which would have been permissible if the offer had been dispatched at the time that its arrival seems to indicate.

We conclude that this section is inapplicable here. It appears, instead, to offer guidance for situations where communication of an offer is delayed but still occurs within the period of time during which the offer may be accepted under the terms of the contract. *See id.*, illus.1. To interpret sec. 49 as Tiedke would have us do, would be to allow one party to tender an offer after the express acceptance deadline has passed, then, if the offer is accepted, to enforce the contract relying on the acceptance or, at its pleasure, to escape the contract claiming that the acceptance was too late.

Accordingly, we conclude that the Tiedkes' delivery of the counteroffer after expiration of the acceptance deadline constituted their waiver of the temporal condition of acceptance.

*By the Court.*——Judgment affirmed.